# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CR-0043-CVE |
| | ) | |
| JERMICO DAJUAN WILLIS, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court is Defendant's Motion to Suppress Evidence (Dkt. # 12). Defendant argues that police lacked reasonable suspicion to initiate an investigative detention, and any evidence seized in violation of his Fourth Amendment rights should be suppressed. The Government responds that police received from a dispatcher a description of a man involved in a "disturbance with a gun" and they almost immediately found a man matching the description very close to the location described by the dispatcher, and that this was sufficient to give rise to a reasonable suspicion that they had found the armed suspect identified in the dispatch. The Court held an evidentiary hearing, at which the government presented the testimony of two witnesses and an exhibit containing the recording of a 911 call and the dispatch heard by police officers.

**I.**

On October 21, 2011 at approximately 4:45 p.m., Tulsa Police Department (TPD) Officers Barry Jason Hamm and Tracy Zeller were preparing to serve a warrant when they heard a dispatch about a disturbance with a gun only a few blocks away. They were the closest unit and they responded to the disturbance. The dispatcher advised the officers that a woman made a 911 call and reported that a black man wearing a gray shirt came to her house with a gun. The caller told the 911

operator that the black man was wearing blue jeans, but this information was not provided to Officers Hamm and Zeller by the dispatcher.[1] The caller stated during the 911 call that the man left her house in a tan car; the dispatcher did not advise the officers that the man left in a car. The dispatcher relayed information to Officers Hamm and Zeller as the 911 call progressed, and the 911 call and the dispatch occurred at least partially simultaneously.

The officers drove to the caller's house but did not find the man described by the dispatcher. Officer Hamm testified that they arrived at the house approximately two minutes after hearing the dispatch. They drove past the house to see if the suspect had walked down the street. Officer Zeller testified that they approached the house from the north and they followed the road as it turned approximately 90 degrees to the east. At some point, the officers radioed the dispatcher that they were at "37th and 124th," but both officers testified that the stop occurred on 34th Street.[2] As they turned the corner, they observed two men walking away from them. One of the men was a black man wearing a gray shirt. The officers turned on the emergency lights on their patrol car and pulled up to the two men. They stepped out of their vehicle, displayed their firearms, and ordered the men to get on the ground. The officers did not point their firearms at the men, but they treated this is a high risk stop and had their firearms easily accessible. The men complied with directions given by Officers Hamm and Zeller. Officer Zeller served as the cover officer, and he monitored the men as

---

[1] Both officers recalled that the dispatcher reported that the suspect was wearing blue jeans, but the Court has reviewed the audio recording of the dispatch and the dispatcher does not mention that the suspect was wearing blue jeans.

[2] Officer Zeller testified that a slight discrepancy in the location radioed to dispatch is not uncommon as officers do not always know their exact location. The Court finds that Officer Zeller's testimony on this point is credible and, in any event, the cross streets of "37th and 124th" are sufficiently close to "34th Street" as stated in the officers' testimony that this would not constitute a material discrepancy.

Officer Hamm approached the man in the gray shirt.  Officer Hamm conducted a pat-down of defendant and felt a pistol in the front of defendant's jeans.  Hamm removed a loaded 9mm pistol from the front of defendant's jeans.  Police checked defendant's criminal history and learned that he had three prior felony convictions, and they arrested him for possession of a firearm after former felony conviction.

## II.

Defendant argues that police stopped him without a warrant for his arrest and the "search" of his person violated his Fourth Amendment right to be free from unlawful search or seizure. Dkt. # 12, at 2.  At the evidentiary hearing, defendant clarified that he is arguing that police lacked enough objective evidence to form a reasonable suspicion that he was the man described by the dispatcher.  The government responds that police had reasonable suspicion to stop defendant, because defendant matched the description of the person described by the 911 caller and he was almost immediately found by Officers Hamm and Zeller near the location described by the dispatcher.

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures."  "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."  Terry v. Ohio, 392 U.S. 1, 16 (1968).  "Reasonableness under the Fourth Amendment 'depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" United States v. King, 990 F.2d 1552, 1559 (10th Cir. 1993) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)).  In balancing these interests, the Supreme Court has held that arrests, being the most intrusive of Fourth Amendment seizures, are reasonable only if supported

by probable cause. Novitsky v. City of Aurora, 491 F.3d 1244, 1253 (10th Cir. 2007); United States v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996). Investigative detentions, which are Fourth Amendment seizures of limited scope and duration, are lawful if they are supported by a reasonable suspicion that the detained individual is engaged in criminal activity. Novitsky, 491 F.3d at 1253. The investigative detention must be "justified at its inception and reasonably limited in scope." United States v. Rice, 483 F.3d 1079, 1082 (10th Cir. 2007). The Tenth Circuit has made a clear distinction between the level of suspicion needed to initiate an arrest and an investigative detention:

> While an investigative detention is a seizure within the meaning of the Fourth Amendment, it need not be supported by probable cause. An investigative detention is justified where specific and articulable facts and rational inferences from those facts give rise to reasonable suspicion that a person has committed or is committing a crime.

United States v. Walraven, 892 F.2d 972, 975 (10th Cir. 1989) (quoting United States v. Espinosa, 782 F.2d 888, 890 (10th Cir. 1986)).

In this case, police heard a dispatch that a black man wearing a gray shirt was present at a disturbance with a gun at a specific address. Officers Hamm and Zeller immediately responded to the dispatch and drove to the address. They arrived at the address within two minutes of hearing the dispatch, and they found a black man wearing a gray shirt about a block away from the 911 caller's house. "Reasonable suspicion arises when 'an officer of reasonable caution' has a 'particularized and objective basis for suspecting the person stopped of criminal activity" judged against the totality of the circumstances.'" United States v. Pena-Montes, 589 F.3d 1048, 1052 (10th Cir. 2009) (quoting United States v. Winder, 557 F.3d 1129, 1133-34 (10th Cir. 2009)). Police may rely on statements of a 911 caller to initiate an investigative detention if the caller's information bears "sufficient indicia of reliability." United States v. Brown, 496 F.3d 1070, 1078 (10th Cir. 2007).

4

However, the parties have agreed that it is the information relayed to the officers by the dispatcher, not the 911 call, that is relevant, and the Court agrees with the parties' assessment. The officers did not hear the 911 call and any additional information contained in the 911 call that was not relayed by the dispatcher is not relevant to the reasonable suspicion inquiry. See United States v. Colon, 250 F.3d 130 (2d Cir. 2001).

Although not cited by the parties, the Court finds that the Supreme Court's decision in Florida v. J.L., 529 U.S. 266 (2000), is relevant to the Court's determination as to whether Officers Hamm and Zeller had reasonable suspicion to initiate a stop. In that case, police received an anonymous tip that a black man wearing a plaid shirt was standing at a bus stop, and the tipper reported that the man had a gun. Id. at 268. Police arrived about six minutes later and found three black men, one of whom was wearing a plaid shirt. J.L., the man wearing a plaid shirt, was frisked and police found a gun on his person. Id. Police did not observe any illegal or suspicious conduct before the frisk. The Supreme Court found that the information provided to police before the frisk was insufficient to support reasonable suspicion. The case turned on the reliability of the anonymous tip, and the Supreme Court found that the tip lacked any indicia of reliability and could not reasonably be relied upon by police to conduct an investigative detention. Unlike J.L., there is no dispute in this case concerning the reliability of the tipper and the same issues are not present. The 911 caller gave her name and address, and she also provided a reasonable description of the man and her basis for suspecting that he had a gun. Even though all of the information from the 911 call was not relayed by the dispatcher, this additional information enhances the reliability of the tip and distinguishes this case from J.L. See United States v. Tucker, 305 F.3d 1193, 1201 (10th Cir. 2002).

5

Defendant argues that the information provided to the officers was so generic that it could not give rise to a "particularized and objective basis" for suspecting that defendant was the person identified by the dispatcher. At the evidentiary hearing, defendant provided the Court with two additional cases in support of his argument. In United States v. Jones, 998 F.2d 883 (10th Cir.1993), police were advised that two black men had left a disturbance in a black Mercedes, but they did not know direction the men were traveling. About five minutes later, police officer stopped a black Mercedes but numerous facts suggested that this was not vehicle driven away from the disturbance and it was unlikely that the vehicle could not have been at the location of the disturbance five minutes earlier. Id. at 885. The Tenth Circuit found that police had stopped a random black Mercedes, and police lacked any articulable basis to initiate a stop of the vehicle. Defendant also cites United States v. Rias, 524 F.2d 118 (10th Cir. 1975). In Rias, police officers stopped two black males driving a black Chevrolet because they suspected that the men may have been involved in certain robberies. Id. at 121. However, police did not know if the robbery suspects drove a black or blue Chevrolet and the only description of the robbers was that they were black men. The robberies occurred two weeks to a month earlier. Id. The Tenth Circuit found that police simply stopped two black men driving a black Chevrolet, but police had no objective basis to believe that the men were suspected of criminal activity.

Considering the evidence known to Officers Hamm and Zeller before initiating the stop, the Court finds that the stop was reasonable from its inception. Defendant bore a reasonable resemblance to person described by the dispatcher and he was found near the 911 caller's house. Officers Hamm and Zeller arrived at 911 caller's house about two minutes after hearing the dispatch, and it was reasonable for them to believe that the black male wearing a gray shirt was the same

person described by the dispatcher. The Court gives particular weight to the close geographical proximity of the defendant to the caller's house and the temporal proximity of the events. Officers Hamm and Zeller arrived at the 911 caller's house almost before the 911 call was completed and they found a person matching the description provided to them. The Court also notes that this was a residential area, not a commercial or high traffic area, and police were not confronted with a situation where they were likely to find numerous persons meeting a generic description. The cases cited by defendant are distinguishable. In both Jones and Rias, police stopped a vehicle without any objective basis to believe that the occupants of the vehicle were suspected of criminal activity. In Jones, the police stopped a black Mercedes in a location where it was not even likely that the car could have been at the scene of the disturbance five minutes earlier and, in Rias, there was no description of the black men and no temporal proximity between the alleged crimes and the investigative detention. The Court finds that Officers Hamm and Zeller had sufficient objective evidence to suspect that defendant was involved in a disturbance with a gun, and they had reasonable suspicion to initiate an investigative detention.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Evidence (Dkt. # 12) is **denied**.

**DATED** this 1st day of June, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE